# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ANDREW K[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:17CV29 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Andrew K. ("Andrew") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433, 1381–1383f. Andrew alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) weigh the opinion of his treating physician; and (2) evaluate Andrew's credibility.[3]

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **DENY** Andrew's Motion for Summary Judgment (Dkt. No. 15) and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[3] I note that the case heading in Andrew's "brief in support of a social security appeal" pertains to an unrelated social security case. Dkt. No. 15 at 3. However, the brief itself relates to Andrew and his social security appeal.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Andrew failed to demonstrate that he was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Andrew filed for SSI and DIB in March 2013, claiming his disability began on August 21, 2012, due to back problems and a pinched nerve in his neck.[5] R. 66, 240. Andrew's date last insured was December 31, 2014; thus he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 66; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Andrew's applications at the initial and reconsideration levels of administrative review. R. 78–87, 88–97, 100–10, 111–21. On May 5, 2015, ALJ Anne Sprague held a hearing to consider Andrew's

---

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[5] At the hearing, Andrew amended his alleged onset date to August 21, 2012 because on August 20, 2012 an unfavorable disability decision was on issued by ALJ Ann Sprague on a previously filed social security disability claim; initially, his alleged onset date was August 15, 2009. R. 32, 66–74.

claims for SSI and DIB. R. 29–62. Counsel represented Andrew at the hearing, which included testimony from vocational expert Casey Vass. On December 15, 2015, the ALJ entered her decision analyzing Andrew's claims under the familiar five-step process[6] and denying his claim for benefits.[7] R. 13–24.

The ALJ found that Andrew was insured at the time of the alleged disability onset and that he suffered from the severe impairments of degenerative disc disease, obesity, and lumbago.[8] R. 15. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 17–18. The ALJ specifically considered listing 1.01 (musculoskeletal system), 1.02 (major dysfunction of a joint), and 1.04 (disorders of the spine). Id. The ALJ found that, regarding his mental impairments, Andrew's anxiety and psychological symptoms were nonsevere, and Andrew had no restriction in activities of daily living, mild limitation in social functioning, mild limitation in concentration, persistence, or pace, and no episodes of decompensation of extended duration. R. 16–17.

The ALJ concluded that Andrew retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 18. Specifically, the ALJ found that Andrew can lift/carry 10 pounds frequently and 20 pounds occasionally, sit/stand/walk for six hours in an

---

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] Andrew was 34years old on the amended alleged disability onset date, making him a younger person under the Act. R. 22.

[8] The ALJ determined that Andrew's chest pain, right hand pain, and anxiety, were either non-severe or not medically determinable impairments. R. 16.

eight hour workday, can only frequently climb ladders, ropes, scaffolds, ramps, and stairs, and only frequently bend, stoop, kneel, crouch, and crawl. R. 18. The ALJ determined that Andrew was unable to perform his past relevant work as a truck driver and dispatcher, but that he could perform jobs that exist in significant numbers in the national economy, such as mail clerk, office assistant, and information clerk. R. 22-23. Thus, the ALJ concluded that Andrew was not disabled. R. 24. Andrew appealed the ALJ's decision and the Appeals Council denied his request for review on November 21, 2016. R. 1–4.

## ANALYSIS

Andrew alleges that the ALJ failed to properly: (1) weigh the opinion of his treating physician Glen Tate, M.D.; and (2) evaluate Andrew's credibility.

**A. Medical History**

1. <u>Physical Impairments</u>

Andrew, who has a history of back and neck pain, consistently saw his treating physician, Dr. Tate, for these issues even before his alleged onset date.[9] R. 337. In August 2012, his amended alleged onset date, Andrew reported neck pain after falling down the stairs. R. 328. The next month, he reported improvement, with a pain level of seven out of ten, but on examination he had good range of motion in his neck and intact balance and gait. R. 326–27. Andrew had additional follow up appointments with Dr. Tate complaining of neck pain in January, May, July, and August 2013. R. 319, 315, 342. On examination in January, he had tenderness and spasm in his lower back, but an x-ray of his c-spine was normal. R. 321. On examination in May, he had a tender lumbar spine with decreased range of motion, decreased right grip strength, and normal gait, though he walked "bent forward." R. 317. In July and August, Andrew reported continued

---

[9] Dr. Tate lists Andrew's "chronic problems" as "chronic neck/arm/back pain" following a motor vehicle accident in November 1999. R. 328.

4

neck and back pain, and on examination had mildly decreased neck range of motion. R. 342–48.
Dr. Tate instructed Andrew to continue taking Hydrocodone for pain, and to stay active, while avoiding aggravating his pain. Id. Andrew went to the emergency room in December 2013 after a fall, and a cervical spine x-ray showed mild degenerative posterior spondylosis, with mild facet arthropathy. R. 427, 429. Thereafter, Andrew continued treating with Dr. Tate through 2015 for chronic back and neck pain.

    2. Medical Opinion Evidence

In October 2013, Gene Godwin, M.D., a state agency doctor, reviewed the record and found that Andrew was capable of a limited range of medium work. R. 93–97.

Dr. Tate provided two medical source statements, in July 2014 and May 2015. R. 375, 439. In July 2014, Dr. Tate found that Andrew could stand for only 15 minutes, and sit for only 30 minutes at a time, and lift five pounds only occasionally. R. 375. However, in May 2015, Dr. Tate found Andrew could lift up to 20 pounds occasionally, but would miss more than two days a month due to his disabilities, would need to take multiple unscheduled breaks, and would need to lie on the floor several times a day for 30 to 40 minutes. R. 439–40.

**B. Treating Physician's Opinion**

Andrew argues that the ALJ's decision to give little weight to Dr. Tate's opinions, as set forth in his medical source statements from July 2014 and May 2015, is not supported by substantial evidence. The Commissioner counters that Dr. Tate's opinion was not entirely consistent with the record, which amounted to "benign objective findings," and substantial evidence supports the ALJ's decision.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

Here, the ALJ appropriately considered these factors and the record, in determining the weight to give to the opinion of Dr. Tate. The ALJ gave Dr. Tate's opinion little weight, emphasizing the "relatively normal findings on examination." R. 21. In support, the ALJ referenced the mild findings in the cervical spine x-ray, and also wrote that the opinions were "inconsistent with the progress notes revealing that [Andrew] did not take prescribed pain

6

medication regularly." Id. In discussing Andrew's medical history, the ALJ noted, "[r]ecords continuing through 2015 from Dr. Tate showed ongoing conservative treatment of [] musculoskeletal pain, with no acute physical findings or abnormalities noted." R. 20.

Andrew objects that he did take his "medication as prescribed," including the hydrocodone. Pl's Br. at 11, Dkt. No. 15. However, this argument misinterprets the ALJ's finding. The ALJ did not write that Andrew failed to take his medication as prescribed. She wrote that Andrew "did not take his prescribed pain medication regularly." R. 21. There are multiple instances in the record indicating that Andrew did not, in fact, take his hydrocodone medication regularly, which was prescribed "as needed for pain." R. 314, 318, 344. Dr. Tate wrote in his notes from the May 2013 visit that Andrew, "[h]as required hydrocodone off an[d] on [since 1999] to control pain. Right now doing pretty good. Able to do without any Vicodin over past week." R. 318. In another May 2013 visit, Dr. Tate writes that Andrew is "currently taking Vicodin intermittently. Has not taken any in past seven days." R. 315. In September 2013, Dr. Tate indicated that Andrew was taking hydrocodone "once daily at night." R. 342. Thus, the ALJ did not find that Andrew was abusing his prescription, or not taking his medication as directed. Instead, the ALJ found, as is supported in the record, that Andrew did not consistently take his pain medication *regularly*, such as when he did not require it to control pain.

Andrew also contests the ALJ's characterization of Dr. Tate's examination findings as "relatively normal," noting that the record shows that on examination Andrew had tenderness in the neck, cervical spine, and lumbar spine, muscle spasms in the lumbar and cervical spine, and decreased range of motion in the neck, cervical and lumbar spine. Pl.'s Br. at 12, Dkt. No. 15. Andrew argues, "[i]n almost every treatment note from Dr. Tate, there is a notation of some abnormal finding consistent with his back and neck impairments." Pl.'s Br. at 12, Dkt. No. 15.

7

However, this is not a case where the ALJ found no functional limitations or failed to recognize the claimant's complaints of pain; in fact, the ALJ specifically noted Dr. Tate's examinations showing limited range of motion, tenderness and muscle spasm, positive straight leg raise, grip strength weakness, and leaning while sitting. R. 19–20. Further, the ALJ clearly recognized that Andrew did not have exclusively normal findings on examination by finding severe impairments including degenerative disc disease and lumbago and imposing functional limitations amounting to a limited range of light work. R. 15, 18. Finally, the ALJ agreed to hold open the record for submission of a nerve conduction study and MRI scan, and ordered a consultative orthopedic examination for September 29, 2015; however, the nerve conduction study and MRI scan were never submitted, and Andrew failed to attend the consultative examination.[10] R. 13, 61, 442. The ALJ did not specifically point to Andrew's failure to attend the consultative examination in rejecting the limitations found by Dr. Tate, relying instead on the conservative treatment recommended by Dr. Tate and his findings on examination. However, failure to attend a consultative examination can result in a denial of benefits. See 20 C.F.R. § 404.1518(a) (providing that if you "do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind.").

Here, the ALJ adequately considered the factors outlined in 20 C.F.R. § 416.927(c)(2) and justified the amount of weight afforded with specific reasons, including that Dr. Tate's medical opinion was not consistent with his relatively normal findings on examination.[11] R. 21;

---

[10] In his brief, Andrew "concedes that the only imaging study in the record, an X-ray, showed mild findings." Pl.'s Br. at 11, Dkt. No. 15. The only additional evidence submitted following the hearing was a second medical source statement from Dr. Tate and a prescription for a cane. R. 13.

[11] Andrew points to Taylor v. Colvin, 48 F. Supp. 3d 872, 877 (W.D. Va. 2014) to support his argument that that the stage agency doctor's opinion cannot be used to reject Dr. Tate's opinion, because the state agency doctor did not have "all the evidence, including the opinions of Dr. Tate." Pl.'s Br. at 14, Dkt. No. 15. However, the

See Hendrix v. Astrue, 2010 U.S. Dist. LEXIS 90922, at *7–8, 2010 WL 3448624 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); Overcash v. Astrue, 2010 U.S. Dist. LEXIS 141695, at *16–17 (W.D.N.C. May 21, 2010).

The ALJ considered the opinion of Dr. Tate, together with the evidence in the record, and determined that Andrew was capable of a limited range of light work. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine an RFC that represents Andrew's functional capacity. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinion of Dr. Tate little weight.

**C. Credibility**

Andrew argues that the ALJ's credibility findings are not supported by substantial evidence.[12] In support, Andrew asserts that the that activities used by the ALJ to support her

---

court specifically noted in Taylor that, if the ALJ "had reason to doubt the accuracy or consistency of the physical findings and opinions" provided by the treating physicians, he had "full authority to require [the claimant] to appear for a consultative evaluation" which the ALJ failed to do. Taylor, 48 F. Supp. 3d at 877. In contrast, here, the ALJ both explained why he doubted the accuracy of Dr. Tate's opinions *and* ordered a consultative examination, for which Andrew failed to appear.

[12] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Andrew's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Andrew's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

credibility findings, such as mowing the lawn, watching television, collecting matchbox cars, managing his medications, preparing simple meals, and grocery shopping, "failed to consider [Andrew's] qualifications of those activities." Pl.'s Br. at 16, Dkt. No. 15. Specifically, Andrew's testimony at the hearing that he only uses the microwave and eats a frozen meal or food his wife prepared, and that his wife does the grocery shopping and manages his medications.[13]

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Andrew's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

In this case, the ALJ found Andrew's statements regarding the severity of his limitations not entirely credible in light of his treatment history and the objective medical evidence. The ALJ's opinion includes a detailed consideration of Andrew's medical history, as well as Andrew's own allegations and the ALJ adequately supported her credibility finding. The ALJ emphasized that Andrew's course of treatment has been conservative, and "mainly consisted of

---

[13] Andrew also asserts that the ALJ wrongly relied on the conservative nature of his treatment in making her disability finding because "it is clear [he] was never offered any other options for treatment." Pl.'s Br. at 17, Dkt. No. 15. However, this argument is not well taken, as it underscores the conclusions by the ALJ regarding the benign objective findings, including mild findings in the cervical spine x-ray. In order for pain to be deemed disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir.1996); Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986).

prescribed medications," with "relatively benign objective findings before and after the alleged onset date." R. 22. This case is distinguished from Brown v. Comm'r Soc. Sec. Admin., where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the daily activities of living, writing:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." See Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

873 F.3d at 263. While, here, as asserted by Andrew, the ALJ did mention in her opinion some activities of daily living that arguably do not show that Andrew could "persist through an eight hour workday," unlike in Brown, the ALJ pointed to more than those daily activities to discount his testimony at the hearing, including the record of his treatment and objective medical evidence.[14] Further, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

---

[14] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence or disturb her credibility finding. Therefore, I find that substantial evidence exists to support the ALJ's determination that Andrew's testimony is only partially credible, and that Andrew is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, Andrew's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

    Entered:  September 20, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge